UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DAVID LAPINE,

        Plaintiff,

vs.

BRIAN NICHOLS and WILLIAM
JACKSON, sued in their individual
capacities, DENNIS MILLER, sued
in his individual capacity,

        Defendants.
------------------------------------------------------x

**COMPLAINT**

**08 CIV. 0429**

**JUDGE KARAS**

By and through their counsel, Michael H. Sussman, Esq., plaintiff avers as follows against defendants:

I. **PARTIES**

1. Plaintiff David Lapine is of legal age and resides in the Town of East Fishkill, County of Dutchess, within this judicial district.

2. Defendant Brian Nichols is the duly appointed police chief of the Town of East Fishkill and a resident of the County of Dutchess, within this judicial district.

3. Defendant William Jackson is the duly appointed Building Inspector of the Town of East Fishkill and a resident of the County of Dutchess, within this judicial district.

4. Defendant Dennis Miller is the duly elected Highway Superintendent of the Town of East Fishkill and is a resident of the County of Dutchess, within this judicial district.

II. **JURISDICTION**

5. As plaintiff alleges that defendants have intentionally violated rights guaranteed under

the First Amendment to the United States Constitution, this Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

6. Each of the acts which defendants took and which form the bases for this Complaint were undertaken under color of state law and represented an abuse by the defendant state actor of the authority vested in him by the Town of East Fishkill.

### III. **FACTUAL ALLEGATIONS**

7. Between 2004-06, a female police officer sued defendant Nichols for sexual harassment.

8. Plaintiff David Lapine publicly protested defendant Nichols continued service as police chief and specifically raised issue at Town Board meetings concerning Nichols' fitness to so serve.

9. Such public protest caused the police chief to develop substantial hostility toward the plaintiff.

10. Between 2004-06, plaintiff filed and litigated a First Amendment retaliation case in this Court against defendant Miller.

11. That case settled in 2006; acting through Miller, the Town was required to take certain specific steps to equalize assignments, improve the treatment accorded to plaintiff in the Highway Department and lessen the hostile work environment to which he had been exposed.

12. Rather than take these actions, Miller continued his hostility toward plaintiff, failing to accord him equality in either assignments or treatment.

13. In or about 2003, plaintiff erected an unattached garage on their residential property in the Town of East Fishkill.

14. As plaintiff's parents were in failing health, plaintiff advised the building inspector that he intended to convert the space above the garage to an apartment for his parents.

15. The building inspector approved of this use so long as the Lapines continued to occupy the main house and met all conditions imposed for this use.

16. By 2005-06, plaintiffs allowed other family members to rent the apartment above the garage.

17. Representatives of the East Fishkill Police Department had cause to visit the apartment and knew of its existence in the 2005-06 time frame.

18. No representative from either the building department nor the police department complained or raised any issue with the use plaintiff was then making of the apartment above the garage.

19. In early August 2007, after it had become public knowledge that plaintiff intended to run against defendant Miller for the elected position of Highway Superintendent of the Town of East Fishkill, two representatives of the police department came to the plaintiff's residence in the middle of the night.

20. Awakening plaintiff and his wife, these officers reported that the police department had received a 911 call from the Lapine home.

21. Plaintiff denied that anyone in the home had made any such call and he and his wife demanded the phone number of the originating call.

22. This incident followed defendant Nichols advising Town police officers, his subordinates, to pull plaintiff over at every opportunity.

23. This directive by defendant Nichols represented retaliation for plaintiff's overt

support of the female police officer who had sued the police chief for sexual harassment, plainly a matter of public importance.

24. This directive by defendant Nichols also reflected his anger at plaintiff for his lawsuit against defendant Miller, a friend of the police chief's.

25. After plaintiff protested being awakened in the middle of the night without any legitimate cause or basis, defendant Nichols caused his subordinates to file a complaint with defendant Jackson and the Building Department concerning the accessory apartment on the Lapines' property.

26. Based upon this complaint, which defendant Nichols orchestrated, defendant Jackson barred plaintiff from using his property and made a media issue of the Lapines' operation of an allegedly illegal accessory apartment on their property.

27. Defendant Jackson so acted during the 2007 political campaign as part of a conscious, intentional and concerted effort to embarrass plaintiff, burden his candidacy for public office and punish him for his protected speech and activity.

28. In so proceeding, defendant Jackson conspired with defendants Nichols and Miller to punish plaintiff for his prior advocacy about matters of public importance and for seeking the elective office of Highway Superintendent.

29. As part of the same conspiracy to punish David Lapine for protected speech and activity, defendant Nichols allowed members of his police department to put up political signs hostile to plaintiff Lapine.

30. As part of the same conspiracy to punish David Lapine for protected speech and activity, defendant Jackson selectively enforced local zoning laws against plaintiff and not

against scores of homeowners who, likewise, built and operated accessory apartments after 1985.

31. As part of the same conspiracy to punish David Lapine for protected speech and activity, defendant Jackson and those subordinate to him made false and misleading public statements intended to denigrate and diminish David Lapine, thereby hindering his chances of being elected and punishing him for his protected speech.

32. As a consequence of the concerted action of the three defendants, plaintiff's right to seek political office was substantially burdened.

33. As a consequence of the concerted action of the three defendants, plaintiff's ability to participate in the political process was substantially chilled.

34. As a consequence of the concerted action of the three defendants, plaintiff was caused to suffer embarrassment, anxiety and mental anguish and was deprived of income from his accessory apartment.

IV. **CAUSES OF ACTION**

35. Plaintiff incorporates paras. 1-34 as if fully re-written herein.

36. Defendant Nichols violated plaintiff's rights as protected by the First Amendment and made actionable by 42 U.S.C. sec. 1983 when he intentionally dispatched police officers to harass plaintiff and his family, threatened plaintiff by stating that police officers should stop plaintiff for anything, caused his subordinates to complain during the heart of the electoral campaign against plaintiff's accessory use and permitted police officers to campaign against plaintiff, all in retaliation for plaintiff's public statements opposing his continuation as police chief.

37. Defendant Miller violated plaintiff's rights as protected by the First Amendment

and made actionable by 42 U.S.C. sec. 1983 when he conspired with defendants Nichols and Jackson as set forth above in a conscious effort to burden plaintiff's right to engage in political advocacy and activity.

38. Defendant Jackson violated plaintiff's right not to suffer retaliation for engaging in activities protected by the First Amendment when he decided to selectively enforce zoning laws against plaintiff for using his accessory apartment at the same time he generally permitted such accessory uses throughout the Town of East Fishkill and when he actively publicized, directly and through subordinates, plaintiff's alleged violation of local law at the same time plaintiff was a candidate for the position of Highway Superintendent.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to decide all questions committed to it;

c) award to plaintiff and against each defendant, jointly and severally, compensatory and punitive damages, with pre and post-judgment interest, sufficient to re-pay plaintiff for the damage done to him and to deter such defendants and other like situated and empowered defendants to so misuse the power vested in them for similar personal ends, i.e., revenge for speech and acts protected by the First Amendment;

d) award reasonable attorneys fees and costs and

e) enter any other order the interests of justice and equity compel.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
GOSHEN, NY 10924

DATED: 1/14/08
         GOSHEN, NY